**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IMPERIAL SUGAR COMPANY, | §<br>§ | |
| Plaintiff, | §<br>§ | |
| v. | §<br>§ | Civil Action No. _____ |
| IRONSHORE SPECIALTY INSURANCE COMPANY, | §<br>§ | |
| Defendant. | §<br>§<br>§<br>§<br>§ | **JURY TRIAL DEMANDED** |

## PLAINTIFF IMPERIAL SUGAR COMPANY'S COMPLAINT AND REQUEST FOR DECLARATORY JUDGMENT

COMES NOW, Imperial Sugar Company ("Imperial Sugar" or "Plaintiff") and files this Complaint and Request for Declaratory Judgment against Ironshore Specialty Insurance Company ("Ironshore" or "Defendant"), alleging as follows:

### I.    INTRODUCTION

1.    This action is an insurance coverage dispute that arises in connection with claims asserted by three indirect customers of Imperial Sugar, each of which alleges damage to and loss of use of their food products as a result of allegedly defective sugar manufactured by Imperial Sugar. The allegedly defective sugar involves certain damage to or destruction of the plastic and/or ceramic sheathing of certain "probes" installed in storage vessels and the sugar conveyancing system at Imperial Sugar's sugar packaging facility in Port Wentworth, Georgia. Parts of the probes, which are used to measure the amount and location of sugar contained

in storage vessels and in the sugar conveyancing system, are alleged to have been damaged and cracked or broken off and potentially become commingled within Imperial's sugar product.

2.    Defendant Ironshore is Imperial Sugar's umbrella liability insurer. Ironshore has anticipatorily breached and absolutely repudiated its umbrella liability insurance policy with Imperial Sugar by wrongfully refusing to provide coverage for the claims asserted against Imperial Sugar, as described herein.

3.    This action, *inter alia*, seeks recovery of all damages caused by Defendant's unlawful conduct and declaratory rulings from the Court as to the parties' rights and obligations under the umbrella liability insurance policy at issue.

## II.    PARTIES

4.    Imperial Sugar is, and at all relevant times has been, a corporation organized under the laws of the State of Texas, with its principal place of business located at 8016 Highway 90A, Sugar Land, Texas 77478.

5.    Defendant Ironshore is, and at all relevant times has been, an insurance company organized under the laws of the State of Arizona, with its principal place of business located at 2999 North 44th Street 250 Phoenix, Arizona 85018. Ironshore may be served through its registered agent, S. David Childers, Kutak Rock LLP, 8601 North Scottsdale Road #300, Scottsdale, Arizona 85253, and at the following address specified in the policy at issue: One State Street Plaza, 8th Floor, New York, New York 10004.

### III.   JURISDICTION AND VENUE

6.     The Court has personal jurisdiction over Ironshore, a non-resident insurance company, because Ironshore purposefully availed itself of the privileges and benefits of conducting business in the State of Texas by offering a policy of umbrella liability insurance to Imperial Sugar, and by entering into a contract of insurance with Imperial Sugar, a Texas corporation.   Furthermore, Ironshore, through its appointed claims representative, communicated with Imperial Sugar through Imperial Sugar's Texas office, and Ironshore listed a Texas address for Imperial Sugar on an executed copy of the insurance contract at issue.  This lawsuit arises out of Ironshore's contacts with the State of Texas.

7.     This Court has subject-matter jurisdiction over this lawsuit under 28 U.S.C. § 1332(a)(1) because Imperial and Ironshore are each citizens of different states and the amount in controversy exceeds $75,000, exclusive of interests and costs. Complete diversity of citizenship exists because Imperial Sugar is a citizen of Texas and Ironshore is a citizen of Arizona. *See* 28 U.S.C. § 1332(a)(1), (c)(1).

8.     Venue is proper in this District under the provisions of 28 U.S.C. § 1391 because a substantial part of the events giving rise to Imperial Sugar's claims occurred in this District.

### IV.   FACTUAL BACKGROUND

#### A.   The Allegedly Defective Sugar and Resulting Customer Claims

9.     In July 2010, Imperial Sugar discovered that the plastic and/or ceramic sheathing of certain probes installed in storage vessels and in the sugar conveyancing

system at Imperial Sugar's sugar packaging facility located in Port Wentworth, Georgia had become unexpectedly and accidentally damaged.

10.    In July 2010, Imperial Sugar became aware that, as a result of the foregoing damage, parts of the probes' sheathing had cracked or broken off into small pieces and had potentially become comingled with portions of certain lots of sugar during Imperial Sugar's packaging process.

11.    As a result, in or around July 2010, Imperial Sugar sent product withdrawal notices regarding the potentially defective sugar to customers that had received shipments of the affected sugar through various independent distributors.

12.    Three of Imperial Sugar's indirect customers subsequently asserted claims against Imperial Sugar for damage to and loss of use of their respective manufactured food products, plus allegedly related expenses, all of which were allegedly caused by the incorporation of allegedly defective sugar manufactured by Imperial Sugar into their respective manufactured food products.

12.a.    On or around July 29, 2010, Advancepierre Foods, Inc. f/k/a Pierre Foods, Inc. ("Advancepierre") asserted a claim in the amount of $3,255,930 for damage to, loss of use and expenses involving Advancepierre's bread products, sandwiches, buns, pizzas and appetizers, which allegedly incorporated defective sugar supplied by Imperial Sugar and were allegedly manufactured prior to receipt of the product withdrawal notice.  On December 6, 2010, Advancepierre filed a lawsuit against Imperial Sugar in the Western District of North Carolina, Case No. 5:10-cv-00190-RLV-DSC, seeking recovery on its above-described claim

(the "Advancepierre Lawsuit"). A true and correct copy of the Complaint filed by Advancepierre in the Advancepierre Lawsuit is attached hereto as Exhibit A.

12.b.   In or around August 2010, Conway Import Company, Inc. ("Conway") asserted a claim against Imperial Sugar in the amount of $34,056.88 for damage to, loss of use and expenses involving Conway's salad dressing products, which allegedly incorporated defective sugar supplied by Imperial Sugar and were allegedly manufactured prior to receipt of the product withdrawal notice.

12.c.   In or around August 2010, Maruchan Virginia, Inc. ("Maruchan") asserted a claim against Imperial Sugar in the amount of $138,761.21 for damage to, loss of use and expenses involving Maruchan's soup mix products, which allegedly incorporated defective sugar supplied by Imperial Sugar and were allegedly manufactured prior to receipt of the product withdrawal notice.

13.   The three above-described claims asserted by Advancepierre, Conway and Maruchan, including the Advancepierre Lawsuit, are collectively referred to herein as the "Customer Claims."

**B.   The Underlying Policy**

14.   Imperial Sugar is a named insured under certain liability and umbrella liability insurance policies intended to provide Imperial Sugar and other insureds various layers of liability insurance protection.

15.   Imperial Sugar and a non-party liability insurer (the "Underlying Insurer") are parties to a Commercial General Liability Policy, Policy No. GL 714-62-45, with a policy period from April 1, 2010 to April 1, 2011 (the "Underlying Policy"), whereby the Underlying Insurer agreed to insure Imperial Sugar and other

insureds against certain liability claims.  A true and complete copy of the Underlying Policy is attached hereto as Exhibit B.

16.    The Underlying Policy provides that the Underlying Insurer has a duty to defend and indemnify Imperial Sugar in the event of a covered claim.

17.    The Underlying Policy provides for a $1 million per occurrence limit of liability.

   **C.    The Ironshore Policy**

18.    Imperial Sugar and Defendant Ironshore are parties to a Commercial Umbrella Liability Policy, Policy No. 000215800, with a policy period from April 1, 2010 to April 1, 2011 (the "Ironshore Policy"), whereby Defendant agreed to insure Imperial Sugar and other insureds against liability claims that exceed the limit of liability provided by the Underlying Policy.  A true and complete copy of the Ironshore Policy is attached hereto as Exhibit C.

19.    The Ironshore Policy has a $25,000,000 limit of liability per occurrence.

20.    The Ironshore Policy states that Ironshore "will pay on behalf of the 'Insured' the 'Loss' in excess of the 'Retained Limit' that the Insured becomes legally obligated to pay by reason of liability imposed by law . . . because of . . . 'Property Damage' . . . to which this insurance applies."

21.    Imperial Sugar is listed as the "Named Insured" in Item 1 of the Declarations to the Ironshore Policy, and thus is an "Insured" within the meaning of the Ironshore Policy.

22.    The Customer Claims seek to impose legal liability on Imperial Sugar for "Property Damage," within the meaning of the Ironshore Policy.

23.    The Ironshore Policy defines "Retained Limit" to mean the total limit of liability of the "Scheduled Underlying Insurance." The Ironshore Policy defines "Scheduled Underlying Insurance" to include the Underlying Policy.

24.    The Retained Limit, for purposes of the Customer Claims, is $1 million per occurrence, as provided by the Underlying Policy.

25.    The Ironshore Policy states that Ironshore has "the right and duty to defend any 'Suit' against the Insured that seeks damages for . . . 'Property Damage' . . ." in the event that the total applicable limits of all underlying insurance have been exhausted.

**D.    Imperial Sugar Submits Customer Claims for Coverage**

26.    Imperial Sugar provided notice of the Customer Claims to the Underlying Insurer, in accordance with the notice requirements in the Underlying Policy.

27.    Imperial Sugar provided notice of the Customer Claims to Ironshore, in accordance with the notice requirements in the Ironshore Policy.

28.    The Customer Claims seek recovery of sums that, if proven, constitute covered "Loss" pursuant to the terms and conditions of the Underlying Policy.

29.    No exclusion, condition or other term in the Underlying Policy bars or negates coverage for the Customer Claims.

30.    The Customer Claims seek recovery of sums that, if proven, constitute covered "Loss" pursuant to the terms and conditions of the Ironshore Policy.

31.    No exclusion, condition or other term in the Ironshore Policy bars or negates coverage for the Customer Claims.

32.     Imperial Sugar's potential legal liability in connection with the Customer Claims is in excess of $3 million (plus interest), at least $2 million of which is in excess of the Retained Limit.

### E.     The Wrongful Denial by Ironshore

33.     On or around October 15, 2010, York Risk Services Group, Inc ("York"), Ironshore's claims administrator, sent Imperial Sugar a letter in which York wrongfully denied all coverage on behalf of Ironshore for the Customer Claims. A true and correct copy of the October 15, 2010 denial letter is attached hereto as Exhibit D.

34.     Ironshore's denial was based entirely on its erroneous application of the "Recall of Your Product, Your Work or Impaired Property" Exclusion (the "Recall Exclusion") contained in the Ironshore Policy.

35.     The Recall Exclusion in the Ironshore Policy provides as follows:

> This insurance does not apply to:
>
> * * *
>
> O. Recall of Your Product, Your Work or Impaired Property
>
> "Loss" claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:
>
> 1. "Your Product";
>
> 2. "Your Work"; or
>
> 3. "Impaired Property";
>
> if such product, work or property is withdrawn or recalled from the market or from use by any person or organization

because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

36.     The Customer Claims represent losses claimed against Imperial Sugar that arise from the incorporation of the allegedly defective sugar into Imperial Sugar's indirect customers' finished products (i.e., "derivative products" manufactured using Imperial Sugar's allegedly defective sugar).

37.     The Ironshore Policy defines "Your Product" as follows:

"Your Product" means:

1.      any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

    a.      you;

    b.      others trading under your name; or

    c.      a person or organization whose business or assets you have acquired; and

2.      containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your Product" includes:

1.      warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "Your Product"; and

2.      the providing of or failure to provide warnings or instructions.

"Your Product" does not include vending machines or other property rented to or located for the use of others but not sold.

38.     Imperial Sugar's indirect customers' derivative products (i.e., bread products, sandwiches, buns, pizzas, appetizers, salad dressing products and soup mix

products allegedly manufactured using the allegedly defective sugar) do not fall within the definition of "Your Product," as set forth in the Ironshore Policy, and thus are not subject to the Recall Exclusion.

39.    The Ironshore Policy defines "Your Work" as follows:

> "Your Work" means:
>
> 1.    work or operations performed by you or on your behalf; and
>
> 2.    materials, parts or equipment furnished in connection with such work or operations.
>
> "Your Work" includes:
>
> 1.    warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "Your Work"; and
>
> 2.    the providing of or failure to provide warnings or instructions.

40.    Imperial Sugar's indirect customers' derivative products (i.e., bread products, sandwiches, buns, pizzas, appetizers, salad dressing products and soup mix products allegedly manufactured using the allegedly defective sugar) do not fall within the definition of "Your Work," as set forth in the Ironshore Policy, and thus are not subject to the Recall Exclusion.

41.    The Ironshore Policy defines "Impaired Property" as follows:

> "Impaired Property" means tangible property, other than "Your Product" or "Your Work", that cannot be used or is less useful because:
>
> 1.    it incorporates "Your Product" or "Your Work" that is known or thought to be defective, deficient, inadequate or dangerous; or

2.      you have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

1.      the repair, replacement, adjustment or removal of "Your Product" or "Your Work"; or

2.      your fulfilling the terms of the contract or agreement.

42.     Imperial Sugar's indirect customers' derivative products (i.e., bread products, sandwiches, buns, pizzas, appetizers, salad dressing products and soup mix products allegedly manufactured using the allegedly defective sugar) are alleged to be tangible property that cannot be used or are less useful because they incorporate Imperial Sugar's allegedly defective sugar and cannot be restored to use by the repair, replacement, adjustment or removal of the allegedly defective sugar, or by Imperial Sugar shipping replacement sugar product.

43.     Repair, replacement, adjustment or removal of the allegedly defective sugar from the customers' derivative products is impossible, and will not restore the derivative products to use.

44.     Shipment of replacement product by Imperial Sugar to the indirect customers will not restore the derivative products to use.

45.     Based on the foregoing, Imperial Sugar's indirect customers' derivative products do not fall within the definition of "Impaired Property," as set forth in the Ironshore Policy, and are not subject to the Recall Exclusion.

46.     Because Imperial Sugar's customers' derivative products do not fall within the definitions of "Your Product," "Your Work," or "Impaired Property," the Recall Exclusion is inapplicable to the Customer Claims.

47.     On or around November 8, 2010, Imperial Sugar's counsel, Alston & Bird LLP, sent a letter to York appealing Ironshore's wrongful coverage denial, providing additional information, and requesting that Ironshore reconsider its coverage position.  A true and correct copy of the November 8, 2010 letter is attached hereto as Exhibit E.

48.     York reiterated Ironshore's wrongful denial by way of a letter dated November 15, 2010 to Imperial Sugar's counsel.  A true and correct copy of the November 15, 2010 letter is attached hereto as Exhibit F.

49.     The Underlying Policy contains a "Recall of Products, Work or Impaired Property" Exclusion that is worded virtually identically to the Recall Exclusion in the Ironshore Policy.

50.     The Underlying Insurer has accepted the defense of the Advancepierre Lawsuit without any reservation of rights and has not denied coverage to Imperial Sugar in connection with the Customer Claims on any ground.

51.     The $1 million limit of liability for the Underlying Policy applies only to covered settlements and judgments, if any, in connection with the Customer Claims, and not to defense costs incurred on behalf of Imperial Sugar in those claims.

52.     If and when the Underlying Insurer pays a total of $1 million in covered settlements and/or judgments in connection with the Customer Claims on behalf of Imperial Sugar, Imperial Sugar's coverage under the Ironshore Policy will be triggered.

53.     At that time, Ironshore, pursuant to the terms and conditions of the Ironshore Policy, will be obligated to pay on behalf of Imperial Sugar any covered

settlements and/or judgments, if any, in the Customer Claims that exceed $1 million (i.e., the "Retained Limit" for the Customer Claims).

**COUNT I:  ANTICIPATORY BREACH OF CONTRACT BY IRONSHORE**

54.    Imperial Sugar restates and re-alleges the allegations contained in paragraphs 1-53 of this Complaint as if fully stated herein.

55.    Pursuant to the express terms and conditions of the Ironshore Policy, Ironshore has a contractual obligation to indemnify Imperial Sugar to the extent Imperial Sugar's liability in connection with the Customer Claims is in excess of the Retained Limit.

56.    The terms and conditions of the Ironshore Policy further provide that Ironshore has a contractual obligation to defend Imperial Sugar in connection with the Advancepierre Lawsuit (and any litigation, if any, that may filed in the future by Conway and/or Maruchan in connection with the Customer Complaints) in the event that the total applicable limits of the Underlying Insurance have been exhausted.

57.    Ironshore has wrongfully and unlawfully communicated to Imperial Sugar that Ironshore will not provide any coverage in connection with the Customer Claims.

58.    Ironshore's actions constitute an absolute and wrongful repudiation of the coverage obligations owed to Imperial Sugar under the Ironshore Policy.

59.    Pursuant to the obligations owed Imperial Sugar under the Ironshore Policy, Ironshore is without any just cause or excuse for its absolute repudiation of its obligation to provide coverage in connection with the Customer Claims.

60.     Imperial Sugar has suffered and will continue to suffer damages and harm as a result of Ironshore's absolute repudiation of its obligations to Imperial Sugar under the Ironshore Policy without any just excuse.

61.     Ironshore's actions constitute an anticipatory and material breach of the terms and conditions of the Ironshore Policy.

62.     All conditions precedent for the relief prayed for in this count have been fulfilled.

### COUNT II:  REQUEST FOR DECLARATORY JUDGMENT

63.     Imperial Sugar restates and re-alleges the allegations contained in paragraphs 1-62 of this Complaint as if fully stated herein.

64.     Imperial Sugar requests relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

65.     A dispute exists between Imperial Sugar and Ironshore concerning the parties' respective rights and obligations under the Ironshore Policy.

66.     There exists between the parties a substantial controversy of sufficient immediacy and reality to warrant declaratory relief.

67.     The facts are sufficiently established such that an actual and live controversy exists between the parties and that such controversy is ripe for adjudication.

68.     The declarations by this Court, as prayed for below, will terminate the controversy and remove uncertainty as to the legal rights and obligations between the parties.

69.     Imperial Sugar respectfully submits that this Court should exercise its discretion, pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57, and issue the following declaratory judgments in this action.

70.     Imperial Sugar seeks a declaration and judgment from this Court that, pursuant to the terms and conditions of the Ironshore Policy, Ironshore is obligated to pay on behalf of Imperial Sugar any settlements and/or judgments, if any, in the Customer Claims that are in excess of the Retained Limit specified in the Ironshore Policy (i.e., any settlement and/or judgment amount that exceeds the $1 million limit of liability provided by the Underlying Policy).

71.     Imperial Sugar further seeks a declaration and judgment from this Court that, pursuant to the terms and conditions of the Ironshore Policy, Ironshore is obligated to defend Imperial Sugar in connection with the Customer Claims, including without limitation the Advancepierre Lawsuit, in the event the $1 million limit of liability provided by the Underlying Policy is exhausted.

72.     All conditions precedent for the relief prayed for in this count have been fulfilled.

### ATTORNEYS' FEES AND COSTS

73.     Imperial Sugar necessarily has retained counsel to represent it in this action and has agreed to pay its counsel's reasonable and necessary attorneys' fees and costs.

74.     Imperial Sugar is entitled to recover its reasonable and necessary attorneys' fees and costs under Texas Civil Practice & Remedies Code chapter 38 because this is a suit for breach of a written contract.

### DEMAND FOR JURY TRIAL

75.     Imperial Sugar demands a jury trial on all issues so triable.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Imperial Sugar prays:

a. that the Court issue a declaration and judgment that, pursuant to the terms and conditions of the Ironshore Policy, Ironshore is obligated to pay on behalf of Imperial Sugar any settlements and/or judgments, if any, in the Customer Claims that are in excess of the Retained Limit specified in the Ironshore Policy (i.e., any settlement and/or judgment amount that exceeds the $1 million limit of liability provided by the Underlying Policy);

b. that the Court issue a declaration and judgment that, pursuant to the terms and conditions of the Ironshore Policy, Ironshore is obligated to defend Imperial Sugar in connection with the Customer Claims, including without limitation the Advancepierre Lawsuit, in the event the $1 million limit of liability provided by the Underlying Policy is exhausted;

c. that the Court enter judgment and order Defendant Ironshore to pay Imperial Sugar all damages and other losses resulting from Ironshore's anticipatory breach of the Ironshore Policy;

d. that the Court enter judgment and order Defendant Ironshore to pay Imperial Sugar an award of reasonable attorneys' fees and costs incurred by Imperial Sugar as a result of Ironshore's anticipatory breach of contract;

e. that the Court enter judgment and order Defendant Ironshore to pay Imperial Sugar an award of reasonable attorneys' fees and costs incurred by Imperial Sugar in pursuing this action;

f. that the Court enter judgment and order Defendant Ironshore to pay Imperial Sugar pre- and post-judgment interest as allowed by law; and

g.  that the Court award such other and further relief as may be appropriate in law or

equity.


[SIGNATURE BLOCK ON NEXT PAGE]

Respectfully submitted this 19th day of January, 2011.

/s/ Darren L. McCarty
DARREN L. MCCARTY
Texas State Bar No. 24007631
Southern District of Texas Bar No. 28364
e-mail: darren.mccarty@alston.com
Chase Tower Suite 3601
2200 Ross Avenue
Dallas, TX 75201
Tel: (214) 922-3400
Fax: (214) 922-3899

*Attorney-in-Charge for Plaintiff, Imperial Sugar Company*

OF COUNSEL:

ALSTON & BIRD LLP
Chase Tower Suite 3601
2200 Ross Avenue
Dallas, TX 75201
Tel: (214) 922-3400
Fax: (214) 922-3899

STEPHEN L. BRACY*
Georgia State Bar No. 074215
e-mail: stephen.bracy@alston.com
TEJAS S. PATEL*
Georgia State Bar No. 685898
e-mail: tejas.patel@alston.com
1201 West Peachtree Street
Atlanta, GA 30309-3424
Tel: (404) 881-7000
Fax: (404) 881-7777

*Pro Hac Vice Applications Forthcoming*